JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-173 JGB (KKx)** | Date | June 30, 2023 |
|---|---|---|---|
| Title | *Maha Elregragui Moqaddem v. Upinder S Kalra et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendants' Motion to Dismiss (Dkt. No. 46); (2) VACATING the July 10, 2023 Hearing; (3) *Sua Sponte* DISMISSING Action In Its Entirety; and (4) DISCHARGING Order to Show Cause (Dkt. No. 49) (IN CHAMBERS)

     Before the Court are two matters: (1) a motion to dismiss filed by Defendants Lauren Weis Birnstein, Joseph Burghardt, Upinder S. Kalra, and Kathryn Solorzano ("Judicial Defendants") ("Motion," Dkt. No. 46); and (2) the Court's order to show cause why sanctions should not be imposed on Plaintiff's Counsel. ("OSC," Dkt. No. 49.) The Court finds the matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the July 10, 2023 hearing on it. The Court **DISCHARGES** the OSC. It also *sua sponte* **DISMISSES** the action in its entirety.

## I. BACKGROUND

     On February 3, 2023, Plaintiff Maha Elregragui Moqaddem[1] ("Plaintiff") attempted to open this case, but the Clerk issued a notice of deficiencies because no initiating document (complaint or notice of removal) was attached. (Dkt. No. 1.) On February 6, 2023, Plaintiff filed

---

[1] Plaintiff's Counsel alternately refers to Plaintiff as Maha Visconti. (See, e.g., Opposition at 1.) The Court infers that "Visconti" is her married name but that she is no longer married to her ex-husband. Because it is unclear to the Court what name Plaintiff goes by today, it will simply refer to her as "Plaintiff."

a complaint. ("Complaint," Dkt. No. 2.) On February 27, 2023, Plaintiff filed what the Court construes as a first amended complaint. ("FAC," Dkt. No. 14.) The FAC is largely unintelligible, but the Court can discern that it is brought against Judicial Defendants, George Gascon, Jenna Ann Franklin, Tal Kahana, Mara McIlvain, the County of Los Angeles, the United States of America, and Does 1-10. (See id.) It also appears to bring twelve causes of action: (1) deprivation of civil rights and Brady violations, pursuant to 42 U.S.C. § 1983; (2) joint action/conspiracy to violate civil rights and Brady violations, pursuant to 42 U.S.C. § 1983; (3) deprivation of civil rights: deliberate indifference to constitutional rights "in refusal to investigate evidence demonstrating Ms. Visconti's innocence," pursuant to 42 U.S.C. § 1983; (4) deprivation of civil rights, "false evidence violation [sic]," pursuant to 42 U.S.C. § 1983; (5) joint action/conspiracy to violate civil rights and "false evidence violations," pursuant to 42 U.S.C. § 1983; (6) deprivation of civil rights – supervisorial liability, pursuant to 42 U.S.C. § 1983; (7) deprivation of civil rights – violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; (8) deprivation of civil rights ("Monell violations"), pursuant to 42 U.S.C. § 1983; (9) negligence; (10) "false imprisonment and seeking" (sic); (11) declaratory relief; and (12) injunctive relief. (See id.)

On April 17, 2023, Plaintiff moved for entry of default against Defendants George Gascon and Jenna Ann Franklin. ("Default Request," Dkt. No. 35.) The Clerk flagged the Default Request for deficiencies and forwarded it to the Court. ("Notice of Deficiency," Dkt. No. 38.) On April 20, 2023, the Court denied the Default Request. ("Default Request Order," Dkt. No. 43.) The Court stated,

> Though this case was only filed on February 3, 2023, there are already seven instances of Plaintiff's filings being flagged for deficiencies by the Clerk. Plaintiff has also filed multiple notices of errata. Though Plaintiff's Counsel appears to be a licensed attorney, the complaint is unsuitable for filing in federal court (or any court), as it is inexplicably written in various typefaces and font sizes, evinces utter disregard for rules of grammar and punctuation, and appears to violate multiple Local Rules. . . . All of this demonstrates a pattern of negligent and/or reckless filings by Plaintiff. The Court's review of the docket indicates that Defendants Franklin and Gascon may not have been served properly. As such, entry of default against them would be inappropriate. Plaintiff is **ORDERED** to re-serve Defendants Franklin and Gascon in compliance with the Federal Rules of Civil Procedure.

(Id.)

On April 28, 2023, Judicial Defendants filed the Motion. (Motion.) In support of the Motion, Judicial Defendants filed a declaration of Sarah Overton ("Overton Declaration," Dkt. No. 46-1) and a request for judicial notice. ("RJN," Dkt. No. 46-1.)

The same day, Plaintiff filed a notice of her intent to file a new summons request and service of the FAC on "all parties to this case." ("April 28, 2023 Notice," Dkt. No. 47.) Plaintiff also filed a request for the Clerk to issue a summons. ("April 28, 2023 Summons Request," Dkt. No. 48.)

On May 16, 2023, the Court issued the OSC. (OSC.) The OSC observed that Plaintiff's Counsel has exhibited a pattern of "gross negligence in his filings" and informed Plaintiff of its "grave concerns that this action is being presented for an improper purpose and the factual and legal contentions raised in the FAC are frivolous[.]" (Id. at 2.) It ordered Plaintiff's Counsel to file a response "indicating why there is a nonfrivolous basis for each of the causes of action raised in the FAC," to "respond to each of the arguments raised by the Motion, specifically explaining why, at the time of the filing of this action and the FAC, he believed that the issues raised in the Motion were not fatal to the claims raised in this case," and to address the issues of absolute prosecutorial immunity and the basis for bringing a negligence action against the United States of America. (See id.) It warned Plaintiff that it was considering "*sua sponte* dismissing the entire action with prejudice even against the Defendants who have not yet been properly served in this action, for many of the grounds for dismissal raised by the Motion would equally apply to them." (Id.) It afforded Plaintiff 21 days to withdraw the FAC in accordance with Federal Rule of Civil Procedure 11's "safe harbor." (Id.)[2] On May 18, 2023, the Court revised the deadline to respond to the OSC by ordering Plaintiff to file a response by May 25, 2023. (Dkt. No. 50.)

On May 19, 2023, the Clerk issued its eighth notice of deficiencies so far in this case regarding Plaintiff's filings, indicating that the April 28, 2023 Summons Request was defective because it sought a summons regarding the "2nd Verified Amended Complaint," but "[t]here is no 2nd Amended Verified Complaint." ("May 19, 2023 Notice of Deficiencies," Dkt. No. 51; see also Dkt. Nos. 1, 6, 7, 8, 18, 28, 38, 51.)

On May 22, 2023, Plaintiff filed an opposition to the Motion. ("Opposition," Dkt. No. 52.) On May 23, 2023, Plaintiff filed a declaration of counsel George E. Murphy in support of the Opposition. ("Murphy Opposition Declaration," Dkt. No. 53.)

On May 25, 2023, Plaintiff filed what the Court construes as a response to the OSC. ("OSC Response," Dkt. No. 54.) Plaintiff attached five exhibits directly to the OSC Response. (See OSC Response Exs. A-E, Dkt. Nos. 54-1-5.) On May 26, 2023, Plaintiff filed additional exhibits in support of the OSC Response. (See OSC Response Exs. G-J, Dkt. Nos. 55-1-4.)

On May 30, 2023, Judicial Defendants replied in support of the Motion. ("Reply," Dkt. No. 56.) Judicial Defendants also filed a declaration of Sarah Overton and eight exhibits in support of the Reply. ("Overton Reply Declaration," Dkt. No. 57; Overton Reply Declaration Exs. 1-8.)

---

[2] The "safe harbor" window has now expired.

On June 9, 2023, the Court continued the hearing on the Motion from June 12, 2023 to June 26, 2023. (Dkt. No. 58.) On June 23, 2023, Plaintiff filed an ex parte application to continue the hearing on the Motion from June 26, 2023 until a date after July 7, 2023. ("Application," Dkt. No. 59.) The same day, the Court continued the hearing on the Motion from June 26, 2023 to July 10, 2023, mooting the Application. (Dkt. No. 10.)

## II.     FACTUAL ALLEGATIONS

### A. Request for Judicial Notice

Judicial Defendants request judicial notice of two documents:

- The docket in People v. Maha Visconti, Los Angeles Superior Court case no. BA449560 (Motion Ex. 1);
- The docket in People v. Maha El Pinto Maqaddem, Los Angeles Superior Court case SA098438 (Motion Ex. 2).

(See RJN.) Judicial Defendants authenticate these exhibits through the Overton Declaration. (See Overton Declaration.) Plaintiff does not respond to, and thereby oppose, the RJN, or dispute the authenticity of these documents. (See Opposition.)

The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Proceedings of other courts, including orders and filings, are the proper subject of judicial notice when directly related to the case. See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("court orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b).]"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). Motion Exhibits 1 and 2 are subject to judicial notice and the Court GRANTS the RJN as to those documents.

### B. Factual Allegations in the FAC

The FAC is an incomprehensible 87-page document that is impossible to summarize here. In essence, it details a massive conspiracy among Plaintiff's ex-husband, various lawyers, and Los Angeles County prosecutors and judges to weaponize the criminal justice system against her in numerous ways, ultimately resulting in her imprisonment, despite her innocence. The conspiracy is so vast that Plaintiff believes the United States of America was "negligent" in not investigating and stopping it.

As Judicial Defendants note in the Motion, the FAC arises out of a conviction and sentence rendered against Plaintiff in the Superior Court of California, County of Los Angeles ("Superior Court") in People v. Maha Visconti, Superior Court case no. BA449560 ("Case 1"). (See generally FAC; Motion Ex. 1.) The FAC also contains various allegations concerning the illegality of an ongoing criminal case against Plaintiff, People v. Maha El Pinto Maqaddem, Superior Court case no. SA098438 ("Case 2"). (See generally FAC; Motion Ex. 2.) In sum, Plaintiff alleges that Judicial Defendants' orders issued and decisions made in Cases 1 and 2 violated her rights, were erroneous, void, and fraudulent. She also claims her conviction and sentence in Case 1 was illegal. She sues Judicial Defendants for their actions as the judges presiding over Cases 1 and 2. In addition, she sues the Honorable Kathryn A. Solorzano ("Judge Solorzano") for her actions taken in her capacity as supervising judge of the Superior Court, seemingly on the basis that she improperly handpicked biased judges to hear Plaintiff's criminal cases out of malice.

Plaintiff alleges that the "architect of this injustice" is the District Attorney of Los Angeles, and therefore sues District Attorneys Tal Kahana and Jenna Franklin, their supervisor Mara McIlvain, and District Attorney George Gascon. (See FAC ¶ 17.) She sues the County of Los Angeles seemingly on the basis of *respondeat superior* liability, but also possibly for some kind of Monell[3] claim. As noted above, she alleges that the United States of America (as well as District Attorney George Gascon) were negligent in "monitoring" the individuals referenced above. (See FAC ¶ 107.)

### III. LEGAL STANDARD

**A. Rule 12(b)(1)[4]**

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at

---

[3] v. Department of Social Services, 436 U.S. 658 (1978).

[4] All references to a Rule or Rules hereinafter pertain to the Federal Rules of Civil Procedure.

1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B. Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**C. Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Despite this liberal standard, leave to amend may be denied if amendment would be futile to rectify the deficiencies in a pleading. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

## IV.   DISCUSSION

In the Motion, Judicial Defendants raise seven arguments for the dismissal of the FAC in its entirety, some of which cannot be cured through amendment. (See Motion.) For the reasons discussed below, the Court agrees with Judicial Defendants that the FAC is subject to dismissal against them and GRANTS the Motion. In addition, Judicial Defendants raise multiple fatal deficiencies with the FAC that would apply equally to all Defendants in the case. On the basis of those issues, and additional ones, the Court *sua sponte* dismisses the FAC in its entirety against all Defendants. Though sanctions against Plaintiff's Counsel would very likely be appropriate in light of his unprofessional conduct in this matter, the Court nonetheless exercises its discretion not to impose sanctions and DISCHARGES the OSC.

**A. Motion**

Judicial Defendants raise the following arguments for dismissal of the FAC: (1) it is barred by the Rooker-Feldman doctrine; (2) it is barred by the Younger abstention doctrine; (3) it is barred against Judicial Defendants by absolute judicial immunity; (4) it is barred by the Anti-Injunction Act; (5) it is barred by the statute of limitations; (6) it does not comply with Federal Rule of Civil Procedure 8; and (7) it fails to state a claim upon which relief can be granted, primarily because it is barred by Heck v. Humphrey, 512 U.S. 477 (1994). (See Motion.) Before turning to the merits of some of these arguments (and declining to reach others), the Court discusses two issues raised by the Opposition.

Plaintiff devotes the vast majority of the Opposition to two contentions: that Defendants' Counsel did not comply with Local Rule 7-3 before filing the Motion because she did not adequately discuss the issues raised by the Motion before filing it, and that the Motion is "premature" because the Court declined to enter default against Defendants George Gascon and Jenna Ann Franklin, ordering Plaintiff to re-serve them. (See Opposition.)

Local Rule 7-3 provides, in part: "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the

contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." L.R. 7-3. The Court has reviewed the extensive meet-and-confer correspondence filed by Defendants, as well as the declaration of Defendants' Counsel outlining the steps she took to meet and confer with Plaintiff regarding the substance of the Motion. (See Overton Reply Declaration; Reply at 3-5.) The Court finds that Defendants have satisfied the requirements of Local Rule 7-3. To the extent the substantive discussion of the issues raised by the Motion was brief, that was entirely the fault of Plaintiff's Counsel, who appears to have repeatedly made excuses for his unavailability to meet and confer, and when the parties were finally able to meet, Plaintiff's Counsel claimed he was not ready to meet and confer and refused to engage in a substantive discussion of the issues raised by the Motion. It is evident that Plaintiff's Counsel is stalling for time, likely aware on some level that the pleadings he has filed are grossly inadequate. But if he needed more time to prepare this case, he should have waited to file it and serve it. It was entirely proper for Judicial Defendants to move to dismiss the case against them, and stonewalling by Plaintiff's Counsel to prevent the issues raised by the Motion from being heard should not be rewarded. Moreover, Plaintiff has suffered no prejudice from any inadequacy in the meet-and-confer process, so even if Judicial Defendants had not complied with Local Rule 7-3, the Court would proceed to the merits of the Motion. See Reed v. Sandstone Properties, L.P., 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion on the merits."); De Walshe v. Togo's Eateries, Inc., 567 F. Supp. 2d 1198, 1205 (C.D. Cal. 2008) ("[T]he Court finds that any potential violation of Local Rule 7-3 did not prejudice Plaintiff and the Court exercises its discretion to evaluate Defendant's motion on its merits."); Wilson-Condon v. Allstate Indem. Co., 2011 WL 3439272, at *1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance, and [Defendant] was able to prepare and submit an opposition. Thus, it appears that no prejudice will result if the Court considers the motion to remand on the merits notwithstanding Plaintiff's failure to comply with Local Rule 7–3."); CarMax Auto Superstores California LLC v. Hernandez, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) ("Failure to comply with the Local Rules does not automatically require the denial of a party's motion, ... particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply") (collecting cases). If the Court declined to rule on the merits of the Motion, Judicial Defendants, not Plaintiff, would suffer prejudice.

Any deficiencies in the service of Defendants Jenna Ann Franklin and George Gascon are also irrelevant to the consideration of the Motion, for the Court did not order Plaintiff to re-serve Judicial Defendants. Indeed, Plaintiff served Judicial Defendants with the FAC; once provided with notice of the claims against them, they moved to dismiss on the basis of the obvious infirmities in Plaintiff's pleadings. That was proper.

Plaintiff barely addresses any of the substantive arguments by Judicial Defendants, but it is beyond doubt that she completely fails to even mention four of them: that the FAC is barred by the Younger abstention doctrine; the FAC is barred by the Anti-Injunction Act; it does not comply with Federal Rule of Civil Procedure 8; and it is barred by Heck, 512 U.S. 477. (See Opposition.) By not responding to these dispositive issues in Judicial Defendants' Motion, she

has conceded them. See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation and quotations omitted); Kroeger v. Vertex Aerospace LLC, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (holding that the plaintiff conceded argument by failing to address it in his opposition brief and collecting cases holding the same). On that basis alone, the Court would GRANT the Motion. See 2Tee Couture, Inc. v. By Together, 2014 WL 12577077, at *3 (C.D. Cal., Dec. 16, 2014) ("A plaintiff's failure to respond to a party's argument in an opposition to a motion to dismiss amounts to a concession that such claims should in fact be dismissed.") (citation omitted).

The Court also finds the substantive arguments raised by the Motion to be meritorious. It discusses some of them below, declining to reach Judicial Defendants' remaining contentions, though those are almost certainly meritorious as well.

### 1. The FAC is Barred by the Rooker-Feldman Doctrine

The Rooker-Feldman doctrine prevents federal district courts from exercising subject matter jurisdiction to review a final judgment rendered by a state court. See Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). It bars claims brought by "state-court losers" challenging "state-court judgements rendered before the district court proceedings commenced" and applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Lance v. Dennis, 546 U.S. 459, 460, 466 (2006). It deprives a federal district court of jurisdiction over a direct appeal or a "de facto appeal" from a state court decision. Cooper v. Ramos, 704 F.3 772, 777 (9th Cir. 2012) (citing Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003)). A plaintiff's claims constitute an impermissible de facto appeal when the "plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." Noel, 341 F.3d at 1164. "Reduced to its essence, Rooker held that when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." Id. at 1156. "A federal district court dealing with a suit that is, in part, a forbidden de facto appeal . . . must refuse to hear the forbidden appeal." Id. at 1158. "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." Id. (citation omitted). Claims are "inextricably intertwined" when "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Cooper, 704 F.3d at 779 (citation omitted). The doctrine applies "not only to final judgments, but also to 'interlocutory state court decisions.'" Santos v. Superior Court of Guam, 711 F. App'x 419, 420 (9th Cir. 2018) (quoting Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001)).

The core of the FAC is a de facto appeal of Plaintiff's conviction and sentence in Case 1. (See FAC.) That case resulted in Plaintiff's conviction, rendered on May 25, 2017, for violations of California Penal Code §§ 278 and 278.5(A) (child abduction by depriving right to custody or visitation). (See Motion Ex. 1.) Plaintiff alleges at length that her conviction and sentence in Case 1 were illegal and that various actors violated her rights. Although the FAC is too convoluted to fully understand what relief she seeks, it is apparent that Plaintiff at a minimum seeks injunctive and declaratory relief in the form of an order of this Court (1) declaring the acts of Defendants, including Judicial Defendants, to be illegal and unconstitutional, above all those leading to her conviction and (2) enjoining Defendants from performing largely unspecified acts related to her criminal proceedings. These issues are inextricably intertwined with the state court decision in Case 1, which deprives this Court of subject matter jurisdiction over this case.

In the Opposition, Plaintiff claims that the Rooker-Feldman doctrine contains "exceptions for Fraud and Collusion." (Opposition at 5.) Plaintiff provides no authority in support of this proposition. (See id.) Plaintiff cites a single, out-of-circuit, 1967 district court case in her brief discussion of the doctrine, Resolute Ins. Co. v. State of N.C., 276 F. Supp. 660 (E.D.N.C. 1967), aff'd, 397 F.2d 586 (4th Cir. 1968). That case does not help Plaintiff, for it squarely held:

> The purpose of the suit is clearly to seek a review of the decisions of the Texas courts and the reversal of those decisions for error. The jurisdiction of the District Court is strictly original. It has no jurisdiction to reverse or modify the judgment of a state court. The errors complained of could be reviewed only by the Supreme Court. [Rooker, 263 U.S. 413.] It was the duty of the District Court to dismiss the suit.

Id. at 665. And in case there was any doubt about its resolution of the Rooker-Feldman issue presented, the Fourth Circuit opinion affirming the district court is even clearer:

> Little discussion is needed to affirm the dismissal below. Resolute's action instituted below is based in part on its assertion that the North Carolina Supreme Court's decision was 'grossly erroneous.' Resolute pursued the proper appellate procedure by applying to the United States Supreme Court for certiorari. What it now seeks to accomplish is to have a federal district court act in an essentially appellate capacity and review a state court decision alleged to be erroneous. The District Courts of the United States are not authorized and do not assume to exercise any such power. . . . Resolute will not be permitted to start all over again in the hope of working its way through the federal court system.

Resolute Ins. Co. v. State of N.C., 397 F.2d 586, 589 (4th Cir. 1968) (internal citations omitted).

Even if there were such an exception for "fraud," it would not help Plaintiff. As further noted below, there are no plausible allegations of fraud or collusion in the FAC against Defendants, and none of the documents filed by Plaintiff demonstrate the involvement of Defendants in fraud or collusion. Because the FAC is barred by the Rooker-Feldman doctrine, the Court lacks subject matter jurisdiction over this case.

### 2. The FAC is Barred by the Younger Abstention Doctrine and the Anti-Injunction Act

Judicial Defendants argue that this Court must abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings against Plaintiff in Case 2, pursuant to Younger v. Harris, 401 U.S. 37 (1971) and its progeny. Judicial Defendants also claim that the FAC is barred by the Anti-Injunction Act, 28 U.S.C. § 2283. As noted above, Plaintiff wholly fails to respond to either argument in the Opposition, which the Court construes as a concession that the FAC must be dismissed on those bases. But even if Plaintiff had not conceded the arguments, the Court finds Judicial Defendants' arguments meritorious.

The Younger abstention doctrine expresses a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." Hoye v. City of Oakland, 653 F.3d 835, 843 (9th Cir. 2011) (quoting Younger, 401 U.S. at 41). As a threshold matter, Younger abstention implicates three categories of state proceedings: "(1) 'parallel, pending state criminal proceeding[s],' (2) 'state civil proceedings that are akin to criminal prosecutions,' and (3) state civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund, 754 F.3d 754, 759 (9th Cir. 2014) (quoting Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 70 (2013)). If the state proceeding falls under one of these categories, then a federal court applies the three-pronged test articulated in Middlesex Cnty. Ethics Cmte. v. Garden State Bar Ass'n, 457 U.S. 423 (1982), to determine whether to abstain: "if (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions." Fresh Int'l Corp. v. Agric. Labor Relations Bd., 805 F.2d 1353, 1357–58 (9th Cir. 1986) (citing Middlesex, 457 U.S. at 432.). In addition, "there is a vital and indispensable fourth element: the policies behind the Younger doctrine must be implicated by the actions requested of the federal court." AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1149 (9th Cir. 2007). "[O]nce the three Middlesex elements are satisfied," a court "abstains only if there is a Younger-based reason to abstain—i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." Id. (citing Gilbertson v. Albright, 381 F.3d 965, 978 (9th Cir. 2004)) (emphasis omitted). "When a case falls within the proscription of Younger, a district court must dismiss the federal action." Fresh Int'l Corp., 805 F.2d at 1356.

Here, all of the Younger criteria are present. The portion of the FAC that is not concerned with Case 1 concerns Case 2, an ongoing criminal case against Plaintiff. Plaintiff seeks an injunction precluding Judicial Defendants, and seemingly state prosecutors as well, from taking any action against her in Case 2, which would prevent that case from moving forward. As

such, Plaintiff's state court proceedings are clearly "ongoing." Second, a state's task of enforcing its laws against criminal conduct is "important and necessary," Younger, 401 U.S. at 51-52, and as such, the state proceedings implicate important state interests. Third, as the Case 2 proceeding is ongoing and appellate remedies remain available, Plaintiff has an adequate state forum in which to pursue her claims. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."). Fourth, a ruling by this Court in Plaintiff's favor could have the practical effect of enjoining ongoing state proceedings. Finally, no "extraordinary circumstances" exist to overcome the abstention. See Middlesex Cty. Ethics Comm., 457 U.S. at 435-37.

The Anti-Injunction Act provides, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "On its face the . . . Act is an absolute prohibition [] against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers, 398 U.S. 281, 286 (1970). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of [the Act] itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." Id. at 297. No exceptions to the Anti-Injunction Act apply here, and thus, to the extent Plaintiff asks this Court to enjoin proceedings in Case 2, this Court cannot award Plaintiff the relief she seeks.

### 3. The FAC is Time-Barred

Judicial Defendants argue that the FAC is barred by the statute of limitations for each of Plaintiffs' causes of action. (See Motion at 8-9.) Where it is apparent from the face of the complaint that the statute of limitations has run, a defendant may raise the statute of limitations through a motion to dismiss. See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). The statute of limitations for a claim brought under 42 U.S.C. § 1983 borrows a state's statute of limitations for personal injury actions; in California, that statute of limitations is two years. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007); Cal. Code Civ. Proc. § 335.1. The bulk of Plaintiffs' claims arise under Section 1983, but she also appears to bring a claim for false imprisonment against Judicial Defendants. (See FAC.) The statute of limitations for false imprisonment in California is one year. Cal. Code Civ. P. § 340. "A statute of limitations under § 1983 . . . begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002). "The plaintiff must be diligent in discovering the critical facts. As a result, a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have

known in the exercise of due diligence." Bibeau v. Pacific Northwest Research Foundation Inc., 188 F.3d 1105, 1108 (9th Cir. 1999).

The majority of the contentions in the FAC concern what transpired prior to the disposition of Case 1, wherein Plaintiff entered pleas of *nolo contendere* on May 25, 2017. (See Motion Ex. 1) It also concerns a finding that Plaintiff had violated the terms of her probation on December 24, 2018. (See id.) Plaintiff initiated this action on February 3, 2023, over four years after her causes of action appear to have accrued, rendering them time-barred. She argues in the opposition that the "statute of limitations is stayed until a person is released from custody, and even then the concept of equitable tolling should be applied here." (Opposition at 8.) Plaintiff does not cite any legal authority in support of either position. (See id.) According to the allegations in the FAC, Plaintiff was incarcerated from July 12, 2018 for "one and half years" (sic), which would mean she was released from custody sometime in January 2020 at the latest. (See FAC ¶¶ 4-5.) Even if the Court tolled the statute of limitations for this period of incarceration, her claims would still be time-barred because they were filed over three years later.

### 4. The FAC is Barred by Absolute Judicial Immunity Against Judicial Defendants

Judicial Defendants argue that they are absolutely immune from liability in this lawsuit. (See Motion at 6.) The Court agrees.

Judges are absolutely immune from civil liability arising out of the exercise of their judicial functions, including for damages, declaratory, injunctive and other equitable relief for their judicial acts. Mireles v. Waco, 502 U.S. 9, 11 (1991); Mullis, 828 F.2d at 1394; Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). "Judicial immunity discourages collateral attacks on final judgments through civil suits, and thus promotes the use of 'appellate procedures as the standard system for correcting judicial error.'" In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Mullis, 828 F.2d at 1388 (quoting Stump v. Sparkman, 435 U.S. 349, 356-357 (1978)). "A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." Id. at 1389.

All allegations in the FAC regarding Judicial Defendants' conduct concern their judicial acts, largely in the forms of decisions, rulings and orders they issued in Cases 1 and 2. Plaintiff's allegations against Judge Solorzano (that she improperly assigned certain judges to Plaintiff's cases in her capacity as supervising judge) also concern her performance of a judicial act, i.e., directing a judge to preside over a case. Although her argument is far from clear, Plaintiff suggests in the Opposition that judicial immunity does not apply because Judicial Defendants' conduct was egregious and violative of her rights, and that they were possibly acting outside the scope of their duties by initiating a "questionable series of events." (Opposition at 6-7.) But judicial immunity is an exceptionally broad doctrine that encompasses all of the conduct alleged in the FAC, no matter how Plaintiff characterizes it. Regardless of whether Plaintiff has plausibly alleged that Judicial Defendants committed egregious misconduct in Cases 1 and 2, the FAC does

not set forth any factual allegations showing that Judicial Defendants acted in the "clear absence of all jurisdiction." See O'Neil v. City of Lake Oswego, 642 F.2d 367, 369-70 (9th Cir. 1981) (judicial action is taken in the "clear absence" of jurisdiction only when judicial officers "rule on matters belonging to categories which the law has expressly placed beyond their purview"). Moreover, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump, 435 U.S. at 360. In Stump, the Supreme Court held that a judge who authorized the sterilization of a minor at the request of her mother, without the minor being informed of the true nature of the procedure, was entitled to absolute judicial immunity, even though no statute or common law doctrine expressly allowed for such a petition. See id. at 352, 358, 360. The Supreme Court still found that the judge's "approval of the sterilization petition was a judicial act." Id. at 362. Three Justices dissented, arguing that the "scope of judicial immunity is limited to liability for 'judicial acts,' and . . . what Judge Stump did on July 9, 1971, was beyond the pale of anything that could sensibly be called a judicial act.'" Id. at 365 (Stewart, J., joined by Marshall, J., and Powell, J., dissenting). Even if the conduct alleged in the FAC was thus "beyond the pale," under binding Supreme Court precedent, it is no less a "judicial act" than authorizing the involuntary sterilization of a minor. The FAC may be replete with allegations that Judicial Defendants engaged in fraud, corruption and misconduct of the highest order, but absolute judicial immunity applies "even when the judge is accused of acting maliciously and corruptly[.]" Pierson v. Ray, 386 U.S. 547, 554 (1967). Thus, Judicial Defendants are immune from liability in this case.

### 5. The FAC is Barred by Heck

Judicial Defendants raise multiple reasons why Plaintiff fails to state a claim against them, but the one the Court addresses here is that Plaintiff's claims are barred by Heck, 512 U.S. 477. As noted above, Plaintiff fails to respond to this argument in the Opposition, conceding it.

In Heck, the Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

> demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87.

Plaintiff does not allege that her conviction in Case 1 was reversed, vacated, expunged, set aside or that she has obtained any form of postconviction relief. (See FAC.) From the documents of which the Court has taken judicial notice, it also clear that she cannot allege as much. As such, Plaintiffs' Section 1983 causes of action arising out of her conviction in Case 1 fail as a mater of law.

The Court declines to reach the additional arguments for dismissal of the FAC raised by the Motion. Because there are multiple, mutually reinforcing reasons why the FAC must be dismissed in its entirety against Judicial Defendants as a matter of law, the Court GRANTS the Motion and DISMISSES Judicial Defendants from this action WITHOUT LEAVE TO AMEND.

## B. *Sua Sponte* Dismissal of Remainder of the FAC

As noted above, because the Court harbored serious doubts as to whether Defendants Jenna Ann Franklin and George Gascon had been properly served with the FAC, it denied Plaintiff's request for entry of default against them and ordered Plaintiff to re-serve them. (See Default Request Order.) It does not appear that they have been re-served, for the Clerk issued a notice of deficiencies regarding Plaintiff's summons request on May 19, 2023, which ordered Plaintiff to correct the defect and re-file the request; since that date, Plaintiff has not filed a new summons request, let alone served Defendants Franklin and Gascon. (See April 28, 2023 Summons Request; May 19, 2023 Notice of Deficiencies.) Plaintiff has not filed any proof of service on any remaining Defendants who have yet to enter an appearance, including the United States of America, the County of Los Angeles, Tal Kahana, and Mara McIlvain. Plaintiff has provided no explanation for the failure to re-file a summons request or why some Defendants have not been served.[5]

If the deficiencies in the FAC discussed above were solely limited to Judicial Defendants, the Court would wait for the remaining Defendants to enter appearances and file motions to dismiss before considering the dismissal of the action in its entirety. However, the issues raised above reveal multiple fatal defects to this Court's subject matter jurisdiction, which pertain to the matter as a whole, not just Plaintiff's claims against Judicial Defendants. Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). Jurisdictional questions must be addressed at the outset of a

---

[5] Though the Court need not reach such grounds for dismissal, dismissal against unserved Defendants would also be proper under Federal Rule of Civil Procedure 4(m), as they have not been properly served within 90 days of the filing of the FAC. See Fed. R. Civ. P. 4(m).

case: "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514 (1868). Thus, the Court must ordinarily address any jurisdictional questions first, before reaching the merits of a motion or case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). The Court has already found above that it lacks subject matter jurisdiction over this action. Based on that finding, the Court has no authority to allow this case to proceed, for it lacks jurisdiction over the entirety of the action. Because the deficiencies in the FAC referenced above cannot possibly be cured through amendment, the Court *sua sponte* DISMISSES this action in its entirety against all remaining Defendants WITHOUT LEAVE TO AMEND.

As yet one more reason for dismissing this case, the Court observes that even if it had subject matter jurisdiction notwithstanding the above, there are fatal flaws in any possible bases for liability and/or jurisdiction against the remaining Defendants. Defendants Franklin, Gascon, Kahana and McIlvain are sued for their prosecutorial acts, and thus Plaintiff's claims against them are barred by absolute prosecutorial immunity. Under § 1983, certain government officials are entitled to absolute immunity from damages liability when performing certain functions. This "functional approach" looks to "the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). The Supreme Court has concluded that the activities of prosecutors which are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Thus, a prosecutor is absolutely immune from liability for "initiating a prosecution" and "presenting the State's case." Id. at 431. Moreover, an attorney "supervising a trial prosecutor who is absolutely immune is also absolutely immune." Garmon v. Cty. of Los Angeles, 828 F.3d 837, 845 (9th Cir. 2016). Absolute prosecutorial immunity clearly applies to the acts alleged in the FAC against all employees of the Los Angeles District Attorney's Office, as well as District Attorney Gascon himself. Plaintiff also brings suit against the United States of America for "negligence," apparently on the basis that it should have investigated the acts outlined in the FAC. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983); Baker v. United States, 817 F.2d 560, 562 (9th Cir. 1987). The United States has waived sovereign immunity to a limited extent, primarily through the Federal Tort Claims Act ("FTCA"), which waives immunity where a federal employee's tortious acts cause injury, and the Tucker Act, which waives immunity over claims arising out of contracts involving the United States; those statutes do not apply here. See 28 U.S.C. §§ 1491, 2674. The Court cannot discern any basis for waiver of sovereign immunity on the facts alleged in the FAC. And even if the United States were not immune, Plaintiff's novel and dubious theory of liability against it is frivolous: the United States owed Plaintiff no duty to monitor her state criminal proceedings. As to the County of Los Angeles, the FAC mostly seems to bring Section 1983 claims against it on the basis of *respondeat superior* liability, which is impermissible. Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir. 2002). The Court also cannot discern any viable basis for Monell liability. As far as the Court can discern, there is also no basis for liability against any Doe Defendants.

Finally, the Court has reviewed every one of the evidentiary exhibits Plaintiff has filed. (See OSC Response Exs. A-J.) Plaintiff has helpfully prefaced each with an incendiary characterization of what the document will show, followed by the actual exhibit. This persistently reveals the disconnect between the evidence and Plaintiff's interpretation of it. For example, Plaintiff describes one exhibit as an "E-MAIL OFF THE RECORDS (sic) OF THE COURT DATED 4/27/2022 FROM JUDGE LAUREN BIRNSTEIN TO ATTORNEY RUSSEL HALPERN COACHING HIM TO CONVINCE (sic) PLAINTIFF TO WAIVE THE SERIOUS CONFLIT (sic) FOR SEXUAL CRIMINAL ABUSE COMMITTED BY ATTORNEY HALPERN." (OSC Response Ex. D.) That exhibit contains an email from Judge Birnstein that states: "Dear Mr. Halpern, . . . When we are next in court, if Ms. Maqaddem wants you or your firm to continue to represent her, chooses to waive any conflict (after being advised by independent counsel) and you believe you or your firm can competently represent her, I will consider allowing you to continue to represent her. I also want to raise the possibility of having your partner, Stacey Halpern, be her attorney of record. She is knowledgeable about this case, can get up to speed on it quickly, and because (I assume) the defendant has hired your 'firm.'" (Id.) While the Court does not fully understand the history leading to any potential conflict of interest, the exhibit clearly does not show Judge Birnstein "coaching" an attorney to waive a conflict – it states that she will "consider" allowing a conflict waiver provided the lawyer's client, Plaintiff, agrees to one after being advised by *independent counsel*. This hardly demonstrates Judge Birnstein's knowing involvement in the sweeping conspiracy against Plaintiff. But more to the point, even if these exhibits demonstrated what Plaintiff claims they do (they do not), and even if the Court accepted as true all of the plausible, specific allegations in the FAC, they would still provide no basis for liability against the various prosecutors and judges she is suing, as well as the County of Los Angeles and the United States of America. Even if Ms. Moqaddem's ex-husband falsely accused her of crimes, even if her former lawyers failed her, even if prosecutors should have believed she was innocent and disbelieved her accusers, and even if judges should have taken her side in all this, filing a civil suit in this Court against Defendants is not the vehicle to air her grievances. A criminal appeal is. The Court's analysis has nothing to do with whether it believes Plaintiff, whether she was treated unfairly, or even whether she is or is not the victim of a vast conspiracy and miscarriage of justice. That could all be true, and it would make no difference to the outcome reached here. This Court lacks jurisdiction over Plaintiffs' claims, all Defendants but the County of Los Angeles are immune from them, and there is no viable basis for liability against the County. As a purely legal matter, Plaintiff's entire action is fatally flawed, and it is time for it to end.

### C. OSC

The Court's OSC observed the following:

> The Court has read the FAC. It is an incomprehensible 87-page document, written in stream of consciousness prose that does violence to the English language and federal pleading standards. In many ways, it would be a subpar filing if written by a *pro se* plaintiff,

> but it is particularly galling given that Plaintiff's Counsel is a licensed attorney. The Court has also read the Motion, and finds that many, if not all, of the arguments raised therein are meritorious. Moreover, they raise such fundamental issues with this case that they call into question why any competent attorney would sign his name to such a pleading.

(OSC at 2.) Though the OSC mostly highlighted the substantive deficiencies in Plaintiff's case, it also expressed concern that Plaintiff's Counsel had repeatedly misspelled his own name in filings, as well as this Court, whom he refers to as "Jesus G. Bernard." (See id.) The OSC ordered the following:

> Plaintiff's Counsel shall file a response, accompanied by a declaration signed under penalty of perjury, indicating why there is a nonfrivolous basis for each of the causes of action raised in the FAC. In doing so, Plaintiff's Counsel shall respond to each of the arguments raised by the Motion, specifically explaining why, at the time of the filing of this action and the FAC, he believed that the issues raised in the Motion were not fatal to the claims raised in this case. In addition, Plaintiff's Counsel shall address the following issues:
>
> - Why, at the time of the filing of this action and the FAC, did Plaintiff's Counsel believe there was a nonfrivolous basis for bringing claims against individuals employed by the Los Angeles District Attorney's Office despite the doctrine of absolute prosecutorial immunity?
> - Why, at the time of the filing of this action and the FAC, did Plaintiff's Counsel believe there was a nonfrivolous basis for bringing a negligence action against the United States of America for a purported failure to investigate the allegations raised in the FAC? What legal authority, if any, supports such a cause of action?

(OSC at 2.)

      Plaintiff's Response gets off to a bad start, for it begins, "TO THE DEPARMENT (sic) OF JUSTICE, THE HONORABLE JUDGE JESUS BERNARD AND PARTIES AND THEIR RESPECTIVE ATTORNEYS . . . ." (Response at 1.) It fares no better later on, for Plaintiff's Counsel does not address the majority of what he was ordered to address in the OSC. He responds only to the Rooker-Feldman, prosecutorial and judicial immunity and statute of

limitations issues, and barely does so at that; he ignores the remainder of the Court's OSC. (See Response.) Plaintiff's Counsel does explain that he suffers from (unspecified) health issues, that he also has an eye condition that makes it difficult for him to type, and two of the paralegals who worked for him have passed away. (See Response at 16.) He also avers that he is attempting to hire additional staff to help him with this case. (See id.) The Court infers that Plaintiff's Counsel is a solo practitioner who has essentially been working on this case alone.

The Response does not change the Court's view expressed in the OSC that this action is legally frivolous and that work product like the FAC has no place in federal court, certainly not when it is authored by a licensed attorney. As such, there are ample grounds for the imposition of sanctions on Plaintiff's Counsel. Nonetheless, it appears from the Response that Plaintiff's Counsel's filing and prosecution of this action reflects a lack of competence, not malicious intent. The Court also weighs the health issues apparently facing Plaintiff's Counsel in assessing the propriety of sanctions. Ultimately, justice must be "tempered with mercy[.]" United States v. Sanges, 144 U.S. 310, 316 (1892). In light of the equities of the situation and the fact that the case is already being dismissed with prejudice, the Court declines to impose sanctions on Plaintiff's Counsel and DISCHARGES the OSC. Nonetheless, the Court warns Plaintiff's Counsel that the work product he has produced in this case is unacceptable, and this Court or other courts may not be so forgiving if presented with similar filings in the future.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **DISMISSES** Judicial Defendants from the FAC **WITHOUT LEAVE TO AMEND.** The July 10, 2023 hearing is **VACATED**. The Court *sua sponte* **DISMISSES** this action in its entirety against all remaining Defendants **WITHOUT LEAVE TO AMEND.** The OSC is **DISCHARGED**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**